| | |
|---|---|
| **Internal Revenue Service**<br>2864 South Circle Dr<br>Colorado Springs, Colorado 80906 | **Department of the Treasury**<br><br>Taxpayer Identification Number:<br>Redacted |
| Date: May 15, 2018 | Form:<br>720<br>Tax Period(s) Ended and Deficiency Amount(s):<br>See Form 5385 |
| CSI Aviation INC<br>Ashley Dunn<br>3700 Rio Grande Blvd NW Ste 1<br>Albuquerque, New Mexico 87107 | Person to Contact:<br>Richard Sorrell<br><br>Contact Telephone Number:<br>719-226-3268<br>Employee Identification Number:<br>1000705451<br>Last Date to Respond to this Letter:<br>August 17, 2018 |

Dear Ashley,

We have enclosed an examination report showing proposed changes to your tax for the period(s) shown above. Please read the report, and tell us whether you agree or disagree with the changes by the date shown above.

**If you agree with the proposed changes...**

1. Sign and date the enclosed agreement form.

2. Return the signed agreement form to us.

3. Enclose payment for tax, interest and any penalties due. Make your check or money order payable to the **United States Treasury.** You can call the person identified above to determine the total amount due as of the date you intend to make payment.

4. After we receive your signed agreement form, we will close your case.

If you pay the full amount due now, you will limit the amount of interest and penalties charged to your account. If you agree with our findings, but can only pay part of the bill, please call the person identified above to discuss different payment options. We may ask you to complete a collection information statement to determine your payment options, such as paying in installments. You can also write to us or visit your nearest IRS office to explain your circumstances. If you don't enclose payment for the additional tax, interest, and any penalties, we will bill you for the unpaid amounts.

**If you don't agree with the proposed changes...**

1. You may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree after the meeting or telephone conference, you can:

Letter 950-E(DO) (6-2005)
Catalog Number 39911Q

EXHIBIT B

2. Request a conference with our Appeals Office. If the total proposed change to your tax is:

- $25,000 or less for *each* referenced tax period, send us a letter requesting consideration by Appeals. Indicate the issues you don't agree with and the reasons why you don't agree. If you don't want to write a separate letter, you can complete the Statement of Disputed Issues at the end of this letter and return it to us.

- More than $25,000 for *any* referenced tax period; you must submit a formal protest.

If you request a conference with our Appeals Office, an Appeals Officer will call you (if necessary) for an appointment to take a fresh look at your case. The Appeals Office is an independent office and most disputes considered by the Appeals Office are resolved informally and promptly. By requesting a conference with our Appeals Office you may resolve the matter sooner and/or prevent interest and any penalties from increasing on your account.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process*. Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process*.

You must mail your signed agreement form, completed Statement of Disputed Issues, or a formal protest to us by the response date show in the heading of this letter. If you decide to request a conference with the examiner's supervisor, your request should also be made by the response date indicated.

MAIL RESPONSES TO:     **Internal Revenue Service**
                       Attn: Richard Sorrell
                       2864 South Circle Dr
                       Colorado Springs, Colorado 80906

If we don't hear from you by the response date shown in the heading of this letter, we will have to process your case on the basis of the adjustments shown in the enclosed statement.

If you have any questions, please contact the person whose name and telephone number are shown above.

Thank you for your cooperation.

                                        Sincerely yours,

                                        *Richard Sorrell*
                                        Richard Sorrell
                                        Internal Revenue Agent (Excise Tax)

Enclosures:
Copy of this letter
Examination Report
Form 13683
Publication 3498
Envelope

**Letter 950-E(DO) (6-2005)**
Catalog Number 39911Q

| Form **13683**<br>(June 2005) | Department of the Treasury — Internal Revenue Service<br>**Statement of Disputed Issues** | Sheet ____ of ____ |
|---|---|---|

*("x" box if applicable)*

☐   The proposed change is $25,000 **or** less for each of the Referenced Tax Period*(s)*.

**Issue*(s)* I Disagree with:**

_____

**Reason*(s)* for Disagreement:**

_____

***(If more space is needed, attach an additional sheet)***

| Signature | Date |
|---|---|

Catalog No. 39910F         www.irs.gov         Form **13683** (6-2005)

Page 1 of 1

# Excise Tax Examination Changes

Form number: 720

Taxpayer's name and address
CSI Aviation INC
3700 Rio Grande Blvd NW Ste 1
Albuquerque, New Mexico 87107

Social Security Number or Employer Identification Number
Redacted

Person with whom examination changes were discussed (and title)
John Howard                                POA

| Period Ended (1) | IRS Number or CRN (2) | Kind of Tax (3) | Corrected Tax Liability or Credit per Exam (4) | Tax or Credit per Return or Previous Assessment (5) | Tax or Credit Increase or (Decrease) (4 - 5) (6) | Penalties (See Explanation) (7) | Total Tax and Penalties Due or (Refund) (8) |
|---|---|---|---|---|---|---|---|
| Mar 31, 2015 | 026 | FAC | 1,342,728.10 | 19,709.49 | 1,323,018.61 | 0.00 | 1,323,018.61 |
| Jun 30, 2015 | 026 | FAC | 1,030,342.50 | 36,954.52 | 993,387.98 | 0.00 | 993,387.98 |
| Sep 30, 2015 | 026 | FAC | 741,793.02 | 14,352.55 | 727,440.47 | 0.00 | 727,440.47 |
| Dec 31, 2015 | 026 | FAC | 1,019,911.01 | 18,734.76 | 1,001,176.25 | 0.00 | 1,001,176.25 |
| Mar 31, 2016 | 026 | FAC | 758,109.65 | 6,764.85 | 751,344.80 | 0.00 | 751,344.80 |
| Jun 30, 2016 | 026 | FAC | 1,076,166.06 | 10,590.10 | 1,065,575.96 | 0.00 | 1,065,575.96 |
| Sep 30, 2016 | 026 | FAC | 978,578.73 | 15,292.11 | 963,286.62 | 0.00 | 963,286.62 |
| Dec 31, 2016 | 026 | FAC | 1,357,591.54 | 14,821.71 | 1,342,769.83 | 0.00 | 1,342,769.83 |
| Mar 31, 2017 | 026 | FAC | 1,115,504.85 | 8,201.76 | 1,107,303.09 | 0.00 | 1,107,303.09 |
| Jun 30, 2017 | 026 | FAC | 1,087,493.00 | 18,796.70 | 1,068,696.30 | 0.00 | 1,068,696.30 |
| Sep 30, 2017 | 026 | FAC | 929,754.11 | 9,843.19 | 919,910.92 | 0.00 | 919,910.92 |

Other information

Examiner: 1000705451/Richard Sorrell  *Richard Sorrell*
SBSE Excise Territory: WT
Group: 1511
Date: 05/15/2018

Form **5385** (Rev. 6-2015)   Catalog Number 42486Q   publish.no.irs.gov   Department of the Treasury - **Internal Revenue Service**

**Form 886A**

CSI Aviation Redacted
Excise Tax Audit
Quarterly periods 2015 Q1 - 2017 Q3
Prepared by Richard Sorrell, Revenue Agent

| 720 Quarterly Period | Taxable Transportation IRC 4261(a) & (b) Per previously-filed Form 720 For activities not covered in this 886A. | Taxable Transportation ICE-related Flights IRC 4261(a)&(b) | Total Taxable Transportation IRC 4261(a) & (b) Per Audit Including ICE-related Flights | Additional Assessment per Audit |
|---|---|---|---|---|
| 2015 Q1 | $19,709.49 | $1,323,018.61 | $1,342,728.10 | $1,323,018.61 |
| 2015 Q2 | $36,954.52 | $993,387.98 | $1,030,342.50 | $993,387.98 |
| 2015 Q3 | $14,352.55 | $727,440.47 | $741,793.02 | $727,440.47 |
| 2015 Q4 | $18,734.76 | $1,001,176.25 | $1,019,911.01 | $1,001,176.25 |
| 2016 Q1 | $6,764.85 | $751,344.80 | $758,109.65 | $751,344.80 |
| 2016 Q2 | $10,590.10 | $1,065,575.96 | $1,076,166.06 | $1,065,575.96 |
| 2016 Q3 | $15,292.11 | $963,286.62 | $978,578.73 | $963,286.62 |
| 2016 Q4 | $14,821.71 | $1,342,769.83 | $1,357,591.54 | $1,342,769.83 |
| 2017 Q1 | $8,201.76 | $1,107,303.09 | $1,115,504.85 | $1,107,303.09 |
| 2017 Q2 | $18,796.70 | $1,068,696.30 | $1,087,493.00 | $1,068,696.30 |
| 2017 Q3 | $9,843.19 | $919,910.92 | $929,754.11 | $919,910.92 |

**ISSUE**
Whether, in the situation described below, Contractor is required to collect from Agency the taxes imposed by§ 4261 (air transportation of persons excise taxes) of the Internal Revenue Code (Code).

**FACTS**
Definitions used in this 886A:
Contractor = CSI Aviation , Inc.
Agency = Immigration and Customs Enforcement (ICE), United States Department of Homeland Security
Individual A person identified by ICE for deportation (removal) from the United

States
Air Carrier = Various air transportation service providers subcontracted by CSI Aviation, Inc.
Ice Location Hub (hub) = One of six cities located within the United States used by ICE to stage foreign nationals for transportation to locations outside of the United
States
Activities = Various steps of the removal process, including, but not limited to,
resolving legal issues; receiving final approval from a judge to remove;
and confirming that the destination foreign government will accept the
foreign national.

Agency is an agency of the United States government. Contractor is an aviation company that provides various air transportation services. Under the terms of a contract with Agency, Contractor provides unscheduled, on demand air charter services to transport Individual. These services include point-to-point air transportation within the United States, as well as air transportation from the United States to destinations outside of the United States or the 225-mile zone described in § 4262(c)(2) (foreign destination). Agency pays Contractor a fixed hourly rate per flight hour actually flown. Agency has the right to fly as many flight hours as it deems necessary and to occupy every seat on each flight. Contractor's services are provided through its subcontract with Air Carrier; under the subcontract, Air Carrier provides Contractor with aircraft on a wet lease basis.

The air transportation services Contractor provides to Agency are generally comprised of three phases:
• In the first phase, Contractor transports Individual by air from a location within the United States to Hub (domestic leg); Hub is also in the United States. Note: Sometimes, individual is transported to hub location via transportation that is unknown to Contractor. That transportation is outside the purview of this audit.
• In the second phase, Individual spends a period of time on the ground at Hub (interval). At Hub, Activities may take place and each Individual who will travel to the same foreign destination is grouped onto the same flight. Once agency gives orders, Contractor then directs Air Carrier to transport Individual to Individual's foreign destination.
• In the third phase, Contractor transports Individual by air from Hub to Individual's foreign destination aboard Air Carrier's aircraft (international leg).
Individual's entire itinerary is not known by Individual or Contractor prior to the departure of Individual's domestic leg flight. Thus, Individual's flight from Hub to Individual's foreign destination is not scheduled until after Individual arrives at Hub.
The amount of time needed to complete Activities varies from Individual to Individual. As a result, the interval between when Individual arrives at Hub and when Individual departs Hub varies from a few hours to several days; individual's interval at Hub may exceed twelve hours. Generally, the total length of time of the interval at Hub is beyond the control of Contractor or Air Carrier; it typically depends on how quickly Individual completes Activities. In some cases, however, Individual's interval at Hub may increase because of delays in the arrival or departure of the aircraft scheduled to fly Individual.
All of Air Carrier's aircraft that are provided under its subcontract with Contractor have a maximum certificated take-off weight of more than 6,000 pounds. The aircraft do not operate from a rural airport as that term is defined in § 4261 (e)(1)(B).
Contractor collects and pays over to the IRS the tax imposed by § 4261 (c) on amounts paid by Agency to transport Individual. Contractor does not collect and pay over to the IRS the taxes imposed by § 4261 (a) and (b)

CSI provides air-transportation charter services to customers other than ICE. This audit didn't address those services and will not be covered in this 886A. The 4261(a)&(b) tax shown on previously-filed Form 720's is for these customers.

## LAW

Section 4261 (a) imposes a tax on the amount paid for the taxable transportation of any person (percentage tax).

Section 4261(b) imposes a tax on amounts paid for each domestic segment of taxable transportation (domestic segment tax). A "domestic segment" is defined in § 4261 (b)(2) as any segment consisting of one takeoff and one landing and which is taxable transportation.

Section 4261(c)(1) imposes a tax of $12.00 (adjusted annually for inflation) on any amount paid (whether within or without the United States) for any transportation of any person by air, if such transportation begins or ends in the United States (international travel facilities tax).

Section 4261(c)(2) provides that § 4261(c)(1) does not apply to any transportation all of which is taxable under § 4261 (a) (determined without regard to §§ 4281 and 4282).

Section 4261 (d) provides that the tax is paid by the person making the payment subject to tax and § 4291 provides that the tax is collected by the person receiving the payment.

Section 4261 ( e )( 1 )(A) exempts from the domestic segment tax amounts paid for segments beginning or ending at rural airports (rural airport exception). Section 4261 (e)(1 )(B) defines the term "rural airport" as any airport if:

(i) there were fewer than 100,000 commercial passengers departing by air (in the case of any airport not connected by paved roads to another airport, on flight segments of at least 100 miles) during the second preceding calendar year from such airport; and

(ii) such airport: (I) is not located within 75 miles of another airport which is not described in § 4261 (e)(1 )(B)(i), (II) is receiving essential air service subsidies as of the date of the enactment of § 4261 (e)(1 ), or (III) is not connected by paved roads to another airport.

Section 49.4261-7(h)(2) of the Facilities and Services Excise Tax Regulations provides, in relevant part, that a charterer of a conveyance that sells transportation to other persons must collect and account for the air transportation excise taxes with respect to all amounts paid to the charterer for the transportation. In such case, no tax will be due on the amount paid by the charterer to the charter provider for the charter of the conveyance.

Section 4262(a)(1) defines "taxable transportation" for purposes of § 4261 as (1) transportation by air that begins in the United States or in the 225-mile zone (that portion of Canada and Mexico that is not more than 225 miles from the nearest point in the continental United States) and ends in the United States or in the 225-mile zone, and (2) in the case of transportation other than transportation described in (1 ), that portion of such transportation that is directly or indirectly from one port or station in the United States to another port or station in the United States, but only if such portion is not a part of uninterrupted international air transportation.

Section 4262(c)(3) defines the term "uninterrupted international air transportation" as any transportation by air which is not transportation described in § 4262(a)(1) and in which - (A) the scheduled interval between (i) the beginning or end of the portion of such transportation which is directly or indirectly from one port or station in the United States to another port or station in the United States and (II) the end or beginning of the other portion of such transportation is not more than twelve hours, and (B) the

scheduled interval between the beginning or end and the end or beginning of any two segments of the portion of such transportation referred to in § 4262(c)(3)(A)(i) is not more than twelve hours.

Section 49.4262(c)-1 (c) provides rules relating to the term "uninterrupted international air transportation". Section 49.4262(c)-1(c)(2) provides, in relevant part, that where the interval between arrival and departure time at any stopover point in the United States exceeds twelve[1] hours, such transportation is not uninterrupted International air transportation even though the schedules of the airlines do not make possible a scheduling within the twelve-hour limit. Where any interval scheduled for twelve hours or less is increased to exceed twelve hours, the transportation will continue to be uninterrupted international air transportation if the increase in time is attributable to delays in the arrival or departure of the scheduled air transportation. In such case the transportation shall continue to be uninterrupted international air transportation if the passenger continues the passenger's transportation no later than on the first available flight offered by the continuing carrier which affords the passenger substantially the same accommodations as originally purchased. However, if for any other reason such interval at any stopover is increased to more than twelve hours, the transportation will lose its classification as uninterrupted international air transportation.

The regulations further provide that transportation from the point of origin in the United States to a port or station outside the United States and the 225-mile zone, with a stopover in the United States, must be scheduled before the time the initial transportation commences in order for the United States portion of such transportation to qualify as uninterrupted international air transportation.

Section 4262(d) defines the term "transportation" to include layover or waiting time and movement of the aircraft in deadhead service.

Section 4263(c) provides, in relevant part, that where any tax imposed by § 4261 is not paid at the time payment for transportation is made, then such tax shall be paid by the carrier providing the initial segment of such transportation which begins or ends in the United States.

Section 4281 provides that the taxes imposed by § 4261 do not apply to transportation by an aircraft having a maximum certificated takeoff weight of 6,000 pounds or less, except when the aircraft is operated on an established line or when such aircraft is a jet aircraft.

Rev. Rul. 64-6, 1964-1 C.B. 397, which involves the international travel of a military service member and his dependent, applies § 49.4262(c)-1 (c)(2) in a two-step analysis. First, the revenue ruling examines whether the entire trip is scheduled prior to the time the initial transportation commences. Second, the revenue ruling examines whether the scheduled interval between the foreign and domestic portions is twelve hours or less. If both of these inquiries are answered in the affirmative, then the domestic portion of the air transportation is part of uninterrupted international air transportation. Importantly, the revenue ruling performs this analysis on a passenger-by-passenger basis (that is, on each individual passenger's travel itinerary).

---

[1] Section 281A of the Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97-248, 96 Stat 324, increased the allowable interval in § 4262(c)(3) from six hours to twelve hours effective for transportation beginning after August 31, 1982. The regulations were not updated to reflect this change. To avoid confusion, in this memorandum we substituted "twelve" for "six" when the cited published guidance still references a six-hour interval.

## ANALYSIS AND CONCLUSIONS

As an initial matter, generally, amounts paid for taxable transportation by the United States government are not exempt from the air transportation of persons excise taxes unless a waiver is authorized by the Secretary of the Treasury pursuant to the rules provided in § 4293. No waiver is authorized in relation to Agency.

In addition, the aircraft used by Contractor to provide air transportation services to Agency have a maximum certificated take-off weight of more than 6,000 pounds. Therefore, the exception to the air transportation of persons excise taxes provided in § 4281 does not apply to the air transportation services at issue here. Similarly, the services at issue here are not provided using aircraft that operate from a § 4261(e)(1)(B) rural airport. Therefore, the rural airport exception to the domestic segment tax provided by § 4261 (e)(1)(A) does not apply to the air transportation services at issue here.

Further, under § 49.4261-7(h)(2), a charterer of a conveyance that sells transportation to other persons must collect and account for the air transportation excise taxes with respect to all amounts paid to the charterer for transportation. In such case, no tax will be due on the amount paid by the charterer to the charter provider for the charter of the conveyance. Thus, when any of the air transportation of persons excise taxes attaches to amounts paid by Agency to Contractor for air transportation services, Agency is the taxpayer and Contractor is required to collect and pay over the taxes to the IRS. Further, the air transportation of persons excise taxes do not attach to amounts Contractor paid to Air Carrier under their wet lease subcontract arrangement.

We first examine the excise tax consequences related to the domestic leg of the air transportation services provided by Contractor to Agency. We then examine the excise tax consequences of the international leg of the air transportation services provided by Contractor to Agency.

*Domestic Leg*

The percentage tax applies to amounts paid for taxable transportation of any person. Taxable transportation is transportation by air that begins and ends in the United States or in the 225-mile zone, unless it is part of uninterrupted international air transportation. The domestic segment tax is imposed on amounts paid for each domestic segment of taxable transportation. A domestic segment consists of one takeoff and one landing and which is taxable transportation, unless it is part of uninterrupted international air transportation.

The domestic leg of the air transportation services Contractor provides to Agency involves flying Individual from one location within the United States to Hub, which is also within the United States. Because the domestic leg is air transportation that begins and ends in the United States that consists of one takeoff and one landing, it is a domestic segment of taxable transportation unless it is part of uninterrupted international air transportation.

To determine whether the domestic leg is part of uninterrupted international air transportation, we apply the two-step analysis described in Rev. Rul. 64-6. This analysis is performed on a passenger-by-passenger basis. First, we must examine whether the entire trip for Individual is scheduled prior to the time the initial transportation (in this case, the domestic leg) commences. Second, we must examine whether the scheduled interval between Individual's domestic leg and international leg is twelve hours or less.

Under the facts presented, Individual's flight from Hub to Individual's foreign destination is not scheduled until after Individual arrives at Hub. The domestic leg is not part of uninterrupted international air transportation because Individual's entire trip is not

scheduled prior to the time that the initial transportation commences. (See Exhibit 1 for contracts stating transportation is unscheduled air charter services). Under § 49.4262(c)-1 (c)(2), even if Individual actually departs Hub within twelve hours of the Individual's arrival at Hub, the domestic segment will not become part of uninterrupted international air transportation. Thus, the domestic leg is taxable transportation and amounts paid to Contractor for the domestic leg are taxable under § 4261 (a), but not under § 4261 (c).

As discussed above, the domestic leg is a domestic segment unless it is part of uninterrupted international air transportation. Because we determined that the domestic leg is not part of uninterrupted international air transportation, the § 4261(b) tax applies to amounts paid to Contractor for the domestic leg.

In sum, where Individual's entire itinerary is not scheduled prior to the time that the initial transportation commences (such as under the facts described above), Contractor is required to collect both the percentage tax imposed by § 4261 (a) and the domestic segment tax imposed by § 4261 (b) for amounts paid for the domestic leg. If Contractor does not collect these taxes from Agency at the time payment for this air transportation is made, pursuant to § 4263(c), Contractor is required to pay these taxes to the IRS.

*International Leg*

The international leg of the air transportation services provided by Contractor to Agency involves flying from Hub to a destination outside of the United States or 225-mile zone. The international leg is not taxable transportation because it is air transportation that begins, but does not end, in the United States. Therefore, the § 4261 (c) tax applies to amounts paid to Contractor for the international leg, but are not taxable under § 4261 (a) and (b). Accordingly, Contractor is required to collect the § 4261(c) tax for amounts paid for the international leg.

**Fuel Claim Consideration.** CSI files a quarterly claim for fuel consumed by the ICE-related flights discussed in this 886A. It's noteworthy that in its claims, CSI distinguishes between two types of flights. 1) For the segments beginning and ending in the United States, CSI files a partial claim for excise tax on fuel used in "commercial transportation". This fuel claim is for domestic flights only. It's not a claim for international trade flights.  2) For the international segments, CSI files a full claim under IRC 4092 for non-taxable use in international trade. The definition for international differs between IRC 4261 & IRC 4092. However, it's noteworthy that CSI is treating the ICE-related flights flown between two domestic segments as commercial domestic flights. For fuel purposes, CSI is only treating the flights that begin or end in a foreign country as fuel consumed in foreign trade.

**CSI response.** An official written response has not been received, but it is expected that CSI will disagree with the government's position and will file an appeal.

Summary Adjustments

|         | AEX         | AEX 1        | AEX 2        | Bro1         | Bro 2        | IWA         |
|---------|-------------|--------------|--------------|--------------|--------------|-------------|
| 2015 Q1 | $ 4,314.00  | $ 30,125.52  | $ 91,881.68  | $ 66,572.03  | $ 31,320.36  |             |
| 2015 Q2 |             | $ 25,399.69  | $ 123,915.34 | $ 21,411.85  | $ 27,515.43  |             |
| 2015 Q1 |             | $ 66,671.95  | $ 121,137.74 | $ 136,765.08 | $ 81,688.58  |             |
| 2015 Q2 |             | $ 89,511.83  | $ 87,579.73  | $ 88,511.37  | $ 14,802.49  |             |
| 2015 Q3 |             | $ 94,804.53  | $ 103,195.66 | $ 113,119.59 |              |             |
| 2015 Q4 |             | $ 144,137.62 | $ 83,613.26  | $ 280,444.33 | $ 9,289.72   |             |
| 2016 Q1 |             | $ 119,098.50 | $ 100,615.00 | $ 154,437.21 | $ 6,774.78   |             |
| 2016 Q2 |             | $ 50,313.59  | $ 37,712.82  | $ 62,515.96  |              |             |
| 2016 Q2 |             | $ 151,376.46 | $ 31,586.88  | $ 122,297.36 | $ 10,201.71  | $ 13,515.80 |
| 2016 Q3 | $ 15,258.40 | $ 201,303.58 | $ 57,053.78  | $ 172,121.96 | $ 28,556.30  |             |
| 2016 Q4 | $ 16,468.64 | $ 271,163.46 | $ 39,250.35  | $ 216,780.67 | $ 50,179.08  | $ 7,431.53  |
| 2017 Q1 | $ 20,010.33 | $ 144,840.90 | $ 89,108.34  | $ 194,826.80 | $ 4,746.56   |             |
| 2017 Q2 | $ 8,696.48  | $ 169,729.57 | $ 90,745.71  | $ 166,303.98 | $ 23,281.64  | $ 24,806.30 |
| 2017 Q3 |             | $ 136,903.00 | $ 69,456.89  | $ 180,946.74 | $ 10,568.17  | $ 22,616.15 |

There are duplicate rows for some periods, because CSI supplied documents for some periods in multiple

| IWA1 | IWA 2 | IWA 3 | MIA | SAT 1 | SAT 2 | |
|---|---|---|---|---|---|---|
| $ 30,258.30 | $ 45,301.00 | $ 56,465.60 | $ 63,549.52 | $ 17,628.38 | $ 9,434.74 | $ 446,851.12 |
| $ 18,113.78 | $ 32,160.81 | $ 38,663.54 | $ 38,714.72 | $ 21,107.69 | $ 7,647.53 | $ 354,650.38 |
| $ 70,439.92 | $ 107,274.17 | $ 107,250.10 | $ 124,333.72 | $ 39,119.78 | $ 21,486.44 | $ 876,167.49 |
| $ 99,851.03 | $ 23,353.48 | $ 83,833.73 | $ 85,908.86 | $ 50,458.81 | $ 14,926.27 | $ 638,737.60 |
| $ 108,838.72 | | $ 119,744.05 | $ 101,847.19 | $ 70,828.80 | $ 15,061.93 | $ 727,440.48 |
| $ 166,444.42 | | $ 121,924.57 | $ 143,944.21 | $ 47,264.57 | $ 4,113.55 | $ 1,001,176.25 |
| $ 121,287.90 | $ 21,219.99 | $ 98,435.88 | $ 115,476.37 | $ 8,499.33 | $ 5,499.84 | $ 751,344.79 |
| $ 80,938.64 | $ 17,841.13 | $ 37,490.14 | $ 66,001.46 | $ 9,269.26 | | $ 362,082.99 |
| $ 133,115.06 | $ 33,279.22 | $ 85,970.69 | $ 73,501.53 | $ 42,798.03 | $ 5,850.22 | $ 703,492.97 |
| $ 166,445.83 | $ 64,792.57 | $ 102,095.64 | $ 108,409.83 | $ 43,925.61 | $ 3,323.12 | $ 963,286.62 |
| $ 261,165.30 | $ 85,288.34 | $ 142,283.18 | $ 132,964.35 | $ 101,467.99 | $ 18,326.95 | $ 1,342,769.83 |
| $ 218,757.59 | $ 67,921.89 | $ 145,140.76 | $ 141,108.01 | $ 67,803.88 | $ 13,038.01 | $ 1,107,303.09 |
| $ 188,944.24 | $ 16,772.21 | $ 167,314.49 | $ 147,544.74 | $ 59,766.11 | $ 4,790.82 | $ 1,068,696.30 |
| $ 164,328.20 | $ 38,437.52 | $ 146,924.05 | $ 110,757.71 | $ 35,911.22 | $ 3,061.27 | $ 919,910.92 |
| | | | | | | $ 11,263,910.83 |

e workbooks.

"Corrected report"    Page 1 of 2

# Excise Tax Examination Changes

Form number: 720

Taxpayer's name and address
CSI Aviation INC
3700 Rio Grande Blvd NW Ste 1
Albuquerque, New Mexico 87107

Social Security Number or Employer Identification Number
Redacted

Person with whom examination changes were discussed (and title)
John Howard, POA

| Period Ended (1) | IRS Number or CRN (2) | Kind of Tax (3) | Corrected Tax Liability or Credit per Exam (4) | Tax or Credit per Return or Previous Assessment (5) | Tax or Credit Increase or (Decrease) (4 - 5) (6) | Penalties (See Explanation) (7) | Total Tax and Penalties Due or (Refund) (8) |
|---|---|---|---|---|---|---|---|
| Mar 31, 2015 | 026 | FAC | 1,342,728.10 | 19,709.49 | 1,323,018.61 | 0.00 | 1,323,018.61 |
| Mar 31, 2015 | 027 | FAC | 355,092.50 | 355,092.50 | 0.00 | 0.00 | 0.00 |
| Mar 31, 2015 | 060 | MAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Jun 30, 2015 | 026 | FAC | 1,030,342.50 | 36,954.52 | 993,387.98 | 0.00 | 993,387.98 |
| Jun 30, 2015 | 027 | FAC | 398,381.90 | 398,381.90 | 0.00 | 0.00 | 0.00 |
| Sep 30, 2015 | 026 | FAC | 741,793.02 | 14,352.55 | 727,440.47 | 0.00 | 727,440.47 |
| Sep 30, 2015 | 027 | FAC | 379,771.20 | 379,771.20 | 0.00 | 0.00 | 0.00 |
| Dec 31, 2015 | 026 | FAC | 1,019,911.01 | 18,734.76 | 1,001,176.25 | 0.00 | 1,001,176.25 |
| Dec 31, 2015 | 027 | FAC | 416,498.70 | 416,498.70 | 0.00 | 0.00 | 0.00 |
| Mar 31, 2016 | 026 | FAC | 758,109.65 | 6,764.85 | 751,344.80 | 0.00 | 751,344.80 |
| Mar 31, 2016 | 027 | FAC | 422,428.20 | 422,428.20 | 0.00 | 0.00 | 0.00 |
| Jun 30, 2016 | 026 | FAC | 1,076,166.06 | 10,590.10 | 1,065,575.96 | 0.00 | 1,065,575.96 |
| Jun 30, 2016 | 027 | FAC | 330,570.50 | 330,570.50 | 0.00 | 0.00 | 0.00 |
| Sep 30, 2016 | 026 | FAC | 978,578.73 | 15,292.11 | 963,286.62 | 0.00 | 963,286.62 |
| Sep 30, 2016 | 027 | FAC | 437,183.78 | 437,183.78 | 0.00 | 0.00 | 0.00 |
| Dec 31, 2016 | 026 | FAC | 1,357,591.54 | 14,821.71 | 1,342,769.83 | 0.00 | 1,342,769.83 |
| Dec 31, 2016 | 027 | FAC | 503,617.42 | 503,617.42 | 0.00 | 0.00 | 0.00 |
| Mar 31, 2017 | 026 | FAC | 1,115,504.85 | 8,201.76 | 1,107,303.09 | 0.00 | 1,107,303.09 |
| Mar 31, 2017 | 027 | FAC | 534,640.80 | 534,640.80 | 0.00 | 0.00 | 0.00 |
| Jun 30, 2017 | 026 | FAC | 1,087,493.00 | 18,796.70 | 1,068,696.30 | 0.00 | 1,068,696.30 |

Other information

This corrected report supersedes report dated 5-15-2018. This corrected report includes Abstract 027 (periods 201503-201709) and Abstract 060 (period 201503). Abstracts 027 & 060 show no adjustment in tax for all periods.

Examiner: 1000705451/Richard Sorrell   *Richard Sorrell* (signature)
SBSE Excise   Territory: WT   Group: 1511
Date: 05/16/2018

Form 5385 (Rev. 6-2015)   Catalog Number 42486Q   publish.no.irs.gov   Department of the Treasury - Internal Revenue Service

"Corrected report"

Page 2 of 2

## Excise Tax Examination Changes

Form number: 720

**Taxpayer's name and address**
CSI Aviation INC
3700 Rio Grande Blvd NW Ste 1
Albuquerque, New Mexico 87107

**Social Security Number or Employer Identification Number**
Redacted

**Person with whom examination changes were discussed** *(and title)*
John Howard, POA

| Period Ended (1) | IRS Number or CRN (2) | Kind of Tax (3) | Corrected Tax Liability or Credit per Exam (4) | Tax or Credit per Return or Previous Assessment (5) | Tax or Credit Increase or (Decrease) (4 - 5) (6) | Penalties (See Explanation) (7) | Total Tax and Penalties Due or (Refund) (8) |
|---|---|---|---|---|---|---|---|
| Jun 30, 2017 | 027 | FAC | 413,725.40 | 413,725.40 | 0.00 | 0.00 | 0.00 |
| Sep 30, 2017 | 026 | FAC | 929,754.11 | 9,843.19 | 919,910.92 | 0.00 | 919,910.92 |
| Sep 30, 2017 | 027 | FAC | 395,931.81 | 395,931.81 | 0.00 | 0.00 | 0.00 |

**Other information**
This corrected report supersedes report dated 5-15-2018. This corrected report includes Abstract 027 (periods 201503-201709) and Abstract 060 (period 201503). Abstracts 027 & 060 show no adjustment in tax for all periods.

| Examiner | SBSE Excise | | Date |
|---|---|---|---|
| 1000705451/Richard Sorrell *(signed: Richard Sorrell)* | Territory WT | Group 1511 | 05/16/2018 |

Form **5385** (Rev. 6-2015)   Catalog Number 42486Q   publish.no.irs.gov   Department of the Treasury - **Internal Revenue Service**